NO. 07-03-0387-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JUNE 22, 2005

_____

ERIC D. WILLIS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2003-402757; HONORABLE CECIL G. PURYEAR, JUDGE

_____

Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

**MEMORANDUM OPINION**

Following a plea of not guilty, appellant Eric D. Willis was convicted of murder and sentenced to life imprisonment. Challenging his conviction by two issues, appellant contends (1) the trial court erred in its charge to the jury, and (2) the evidence is legally and factually insufficient to prove he intentionally fired the gun as required by statute.

In the early morning hours of August 16, 2002, Officer John Lofton responded to a shots fired call at an apartment complex. Jeanette Lopez, a resident of an upstairs apartment awoke to the sound of gunshots and someone saying, "this ain't over yet." She called 911 and went back to bed. She heard another gunshot and looked out her open window and, from the light in the parking lot, saw an African American male with braided hair walking across the parking lot with a gun behind his back. Several other African American males accompanied appellant toward apartment number eight, a downstairs apartment.

A group of Hispanic individuals, including the 15-year old male victim, were having a party in apartment number eight. From the evidence presented, it is unclear whether the door was partially opened; however, Lopez testified that she could hear voices coming from the apartment. From her upstairs apartment, she could see the door of apartment number eight and noticed appellant extend his arm across the threshold. She heard another gunshot and called 911 a second time. She saw everyone scatter after the shooting, and after insuring her daughter's safety, ran downstairs to check on the situation. She discovered the victim had been shot in the head.

Lopez's 14-year old daughter testified that she was on the phone when she heard the first shot. She heard a group of African American males talking outside her open window and heard them declare, "we're going to get them fucking Mexicans." She moved to her mother's bedroom and looked out the open window and saw the African American

2

group walking toward apartment number eight. The victim and his friend Crystal were standing in the doorway when she noticed appellant point the gun inside. According to the witness, the victim pushed Crystal out of the way when appellant fired the gun.

Officer Lofton testified that he responded to a shots fired call and, as he pulled into the parking lot, observed an African American male running while looking back at another group of African Americans yelling, "5-0," which is slang for police. After the "5-0" warning, Lofton pulled further into the parking lot and heard a single gunshot. Two African American males ran in front of his patrol car and he noticed one raise his shirt and put something in his waistband. Lofton continued deeper through the parking lot, then exited the patrol car and pursued the two males. He lost sight of them and decided not to pursue them in the dark out of concern for his safety and the safety of the backup officer.

Lofton returned to apartment number eight and found the victim lying motionless on the floor with a gunshot wound to the head. He called for emergency medical services and secured the scene. The victim eventually died from a fractured skull caused by the gunshot to the head.

Detective Gary Hodges investigated the scene and interviewed numerous witnesses. The suspect was described as a black male, about 20 or 21 years old, with long braided hair, and wearing a plaid shirt. An anonymous tip led officers to a local motel where they found appellant. His head had been recently shaved as the clippers and cut hair were still

3

on the vanity. He was arrested and, after being given the required warnings, voluntarily gave an oral and written statement.

By his first issue, appellant contends the trial court erred in its charge to the jury regarding the victim's use of force in defense of a third person. Specifically, he argues the jury instruction precluded the jury from considering self-defense and failed to instruct the jury to find him not guilty on this issue. We agree that the trial court's inclusion of an instruction on the victim's defense of a third person was erroneous, but disagree that appellant was harmed by the error.

During the charge conference, defense counsel objected to paragraph 17 of the charge as being improper, confusing, and diluting the defendant's use of self-defense as provided in paragraph 11 of the charge.[1] Paragraph 17 provides:

> You are further instructed that a person is justified in using force or deadly force against another to protect a third person if:
>
> (1) under the circumstances as the actor reasonably believes them to be, the actor would be justified under the instructions set forth in numbered Paragraph 11 and numbered Paragraph 16 of this charge in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and
>
> (2) the actor reasonably believes that his intervention is immediately necessary to protect the third party.

---

[1]Paragraph 11 of the charge instructed the jury on the elements of self-defense. *See generally* Tex. Pen. Code Ann. § 9.31 (Vernon 2003).

4

However, under the law of defense of another, unlike under the law of self-defense, the actor is under no duty to retreat even though a reasonable person in the actor's situation would have retreated.

All persons are presumed to know the law.

If you believe from the evidence beyond a reasonable doubt that at the time and place in question [the victim] reasonably believed that the defendant, ERIC WILLIS, was using or attempting to use unlawful deadly force against Crystal Acosta and that said [victim] reasonably believed that the use of deadly force when and to the degree he used the same was immediately necessary to protect Crystal Acosta, and you further believe from the evidence beyond a reasonable doubt that the defendant, ERIC WILLIS, as viewed from his standpoint alone, did not reasonably believe that [the victim] was using or attempting to use unlawful deadly force against him, you will find against the defendant on his plea of self-defense. But if you do not so believe from the evidence beyond a reasonable doubt, or if you have reasonable doubt thereof you will determine the defendant's right of self-defense in accordance with the instructions of this charge under numbered Paragraph 11 above dealing with the right of self-defense and give no further consideration to the instructions under numbered Paragraph 17.

The function of the jury charge is to instruct the jury on applying the law to the facts. Abdnor v. State, 871 S.W.2d 726, 731 (Tex.Cr.App. 1994). When reviewing the record for jury charge error, we must first determine whether error actually exists and second, whether the error was calculated to injure the rights of the defendant sufficient to require reversal. See Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 1981); Hutch v. State, 922 S.W.2d 166, 170-71 (Tex.Cr.App. 1996).

According to Crystal, the victim heard a knock and she accompanied him to the door. She could not recall whether the door was already open. At least six or seven African American males, including appellant, were standing outside. The defendant got in her face and asked "what the 'f' are you looking at"? As she looked down, appellant

5

reached inside the doorway and she heard the victim scream her name as he pushed her with both of his hands. She heard a gunshot and hit the floor. Although she was not injured, she realized the victim had been shot.

A defendant is entitled to an instruction on every defensive issue raised by the evidence regardless of the strength of the evidence. Ferrel v. State, 55 S.W.3d 586, 591 (Tex.Cr.App. 2001); Brown v. State, 955 S.W.2d 276, 279 (Tex.Cr.App. 1997). Defense of a third person requires that the intervention by the actor be immediately necessary to protect a third person. § 9.33(2). Logically, the term "actor" refers to the accused, not the victim. See Hughes v. State, 719 S.W.2d 560, 564 (Tex.Cr.App. 1986). See also Banks v. State, 955 S.W.2d 116, 119 (Tex.App.–Fort Worth 1997, no pet.). The victim acted in defense of Crystal. Appellant, however, was not protecting a third person. Thus, an instruction on defense of a third person was not applicable and the trial court erred in so instructing the jury.

Having concluded that inclusion of the victim's defense of a third person in the charge was erroneous, we now consider whether there was sufficient harm to require reversal. Appellant argues the trial court's error precluded the jury from fully considering self-defense and failed to instruct the jury to find him not guilty on the issue.

Self-defense is a justification which, if established, is a defense to prosecution. Tex. Pen. Code Ann. §§ 2.03, 9.02, & 9.31 (Vernon 2003). A person is justified in using force against another when and to the degree he reasonably believes the force is immediately

6

necessary to protect himself against the other's use or attempted use of unlawful force. §
9.31(a). A person is justified in using deadly force against another when and to the degree
he reasonably believes that deadly force is immediately necessary to protect himself
against the other's use or attempted use of unlawful deadly force, and a reasonable person
in the actor's situation would not have retreated. § 9.32(a). The reasonableness of the
accused's use of deadly force is viewed from his standpoint at the time he acted. Bennett
v. State, 726 S.W.2d 32, 37-8 (Tex.Cr.App. 1986) (en banc). Whether a defendant's beliefs
are reasonable and justifiable under the circumstances are fact questions for the jury to
decide. Hayes v. State, 728 S.W.2d 804, 808 (Tex.Cr.App. 1987) (on reh'g).

A neighbor testified that prior to the shooting she heard a group of African American
males speaking outside her window and one said, "we're going to get them fucking
Mexicans," as they walked toward the apartment where the shooting took place. Although
some evidence was presented that the victim had a small paring-type knife earlier in the
evening, there was no evidence that the victim exhibited a knife or other weapon at the time
he was shot. Several witnesses who were in the apartment at the time of the shooting
testified they did not see the victim with a knife or weapon and did not hear him threaten
anyone. Crystal testified that when the victim pushed her out of the way with both hands,
he was not holding a knife.

One of the investigating officers testified that a small utility knife was found near the
victim's body; however, testimony was also presented indicating that the location of the

7

knife could have been different depending on whether paramedics disturbed it while treating the victim. Also, no identifiable fingerprints were found on the knife.

By his voluntary statement, appellant claimed the "15 year old dude [victim] just came at me and kept coming after I pulled out my gun. I knew he had something in his hand and he was behind a girl and I saw him holding something but didn't know what." Appellant continued in his statement, "I pointed the gun at him and told him bitch get back and he didn't and the gun went off . . . ."

Excluding the erroneous portion of paragraph 17 of the charge regarding defense of a third person, the jury was instructed to determine appellant's right of self-defense in accordance with paragraph 11 "and give no further consideration to the instructions under numbered Paragraph 17." Paragraph 11 instructed the jury on the law of self-defense and paragraph 12 permitted the jury to acquit appellant if it had reasonable doubt as to whether he was acting in self-defense.

The reasonableness or viability of appellant's defense is a fact issue to be determined by the jury. Saxton v. State, 804 S.W.2d 910, 913-14 (Tex.Cr.App. 1991) (en banc). The jury is entitled to believe or disbelieve any witness and resolve any inconsistencies in favor of either party. Sharp v. State, 707 S.W.2d 611, 614 (Tex.Cr.App. 1986). A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory. *Saxton*, 804 S.W.2d at 913-14. We conclude the erroneous inclusion in the charge of the victim's defense of a third person did not harm appellant as it did not preclude the

8

jury from considering self-defense.  Instead, the jury 's guilty verdict was a rejection of appellant's theory of self-defense.  Issue one is overruled.

By his second issue, appellant maintains the evidence is legally and factually insufficient to prove he intentionally fired the weapon that resulted in the victim's death. We disagree.  When both the legal and factual sufficiency of the evidence are challenged, we must first determine whether the evidence is legally sufficient to support the verdict.  Clewis v. State, 922 S.W.2d 126, 133 (Tex.Cr.App. 1996).  It is a fundamental rule of criminal law that one cannot be convicted of a crime unless it is shown beyond a reasonable doubt that the defendant committed each element of the alleged offense.  U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2004-05); Tex. Pen. Code Ann. § 2.01 (Vernon 2003).

In conducting a legal sufficiency review, we examine the verdict, after viewing the evidence in the light most favorable to the prosecution, to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Burden v. State, 55 S.W.3d 608, 612-13 (Tex.Cr.App. 2001).  This standard is the same in both direct and circumstantial evidence cases.  *Burden*, 55 S.W.3d at 612-13.  In measuring the sufficiency of the evidence to sustain a conviction, we measure the elements of the offense as defined by a hypothetically correct jury charge.  Malik v. State, 953 S.W.2d 234, 240 (Tex.Cr.App. 1997).  This is done by considering all the evidence that was before

9

the jury—whether proper or improper—so that we can make an assessment from the jury's perspective. Miles v. State, 918 S.W.2d 511, 512 (Tex.Cr.App. 1996). As an appellate court, we may not sit as a thirteenth juror, but must uphold the jury's verdict unless it is irrational or unsupported by more than a "mere modicum" of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Cr.App. 1988).

After conducting a legal sufficiency review under *Jackson*, we may proceed with a factual sufficiency review. *Clewis*, 922 S.W.2d at 133. As an appellate court, we view all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Johnson v. State, 23 S.W.3d 1, 9 (Tex.Cr.App. 2000). We must determine after considering all the evidence in a neutral light, whether the jury was rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Cr.App. 2004). It is the exclusive province of the jury to determine the credibility of the witnesses and the weight to be given their testimony, and unless the record clearly demonstrates a different result is appropriate, we must defer to the jury's determination. *Johnson*, 23 S.W.3d at 8.

Before determining whether the evidence is sufficient to support appellant's conviction, we must review the essential elements the State was required to prove. Appellant was charged with two alternative theories of murder–intentional murder and felony murder. The underlying felony for felony murder was aggravated assault by using

or exhibiting a deadly weapon during an assault. Tex. Pen. Code Ann. § 22.02(a)(2) (Vernon 2003). Furthermore, when the trial court's charge authorizes the jury to convict on several different theories, as it did in this case, the verdict of guilty will be upheld if the evidence is sufficient on any one of the theories. Swearingen v. State, 101 S.W.3d 89, 95 (Tex.Cr.App. 2003).

To be guilty of murder, the State is required to prove that a person intentionally or knowingly caused the death of the victim, intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused the death, or committed or attempted to commit a felony . . . and in furtherance of the commission or attempt . . . committed or attempted to commit an act clearly dangerous to human life that caused the death of an individual. Tex. Pen. Code. Ann. § 19.02(b) (Vernon 2003). A person commits aggravated assault if he intentionally, knowingly, or recklessly causes bodily injury to another person and during the commission of the assault he uses or exhibits a deadly weapon. §§ 22.01(a) & 22.02(a). A deadly weapon is a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury. § 1.07(a)(17)(a).

Over twenty witnesses testified during the guilt - innocence phase of trial. Excluding law enforcement and expert witnesses, a number of witnesses were residents of the apartment complex. The evidence established that the victim resided at a different apartment than where the shooting occurred. Earlier in the day, while at a different

11

apartment, the victim had used a small knife to fill a "Swisher Sweet Cigar" with "weed." According to one of the witnesses, the knife looked like a peeling knife. Another witness testified that the victim had a kitchen knife in his pocket the evening before the shooting. A knife was found on the floor after the shooting; however, witnesses testified that the victim was not in possession of a knife at the time he was shot. Crystal testified that when the victim pushed her out of the way using both hands, he was not holding a knife. By his own voluntary statement, appellant could not place a knife or weapon in the victim's hands at the time of the shooting.

The medical evidence showed the victim had marihuana and cocaine in his system at the time of his death, which the defense urged could have caused aggressive behavior. Several witnesses testified that the victim did not argue with or provoke appellant or any of the young men in his group. Instead, evidence was presented that an African American male was "talking all kinds of shit how he wanted to get rid of some Mexicans."

By his argument, appellant asserts the State did not prove he intentionally fired the gun. As the State points out, it is not required to prove appellant fired the gun, only that he intentionally or knowingly caused the victim's death. Murder, intentionally or knowingly committed is a result oriented offense. Cook v. State, 884 S.W.2d 485, 490 (Tex.Cr.App. 1994). The accused must have intended the result, death, or have been aware that his conduct was reasonably certain to cause that result. *Id*. Section 6.03 of the Penal Code defines the culpable mental states of "intentionally" and "knowingly" as follows:

12

(a) A person acts intentionally . . . with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly . . . with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly . . . with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

According to the medical examiner, the victim died as a result of the gunshot wound to the head. A two by three inch stippling injury, which is caused by powder particles, indicated the gun was within six inches of the victim's head. By his written statement, appellant admitted pointing the gun at the victim and that the gun went off. Although he declared he "didn't mean for it to happen," his action demonstrated his culpable mental state in engaging in conduct reasonably certain to cause death. We conclude the evidence is legally sufficient to support appellant's conviction.

Concluding the evidence is legally sufficient to support the conviction, we must now determine whether it is factually sufficient. *Johnson*, 23 S.W.3d at 11. It is the exclusive province of the fact finder to determine the credibility of the witnesses and the weight to be given their testimony. Johnson v. State, 571 S.W.2d 170, 173 (Tex.Cr.App. 1978); Armstrong v. State, 958 S.W.2d 278, 284 (Tex.App.--Amarillo 1997, pet. ref'd).

In determining the sufficiency of the evidence, and faced with a record that supports conflicting inferences, we must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflict in favor of the prosecution and must

13

defer to that resolution. Couchman v. State, 3 S.W.3d 155, 163 (Tex.App.–Fort Worth 1999, pet. ref'd). Further, in circumstantial evidence cases it is not necessary that every fact point directly and independently to the accused's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. Johnson v. State, 871 S.W.2d 183, 186 (Tex.Cr.App. 1993), *cert. denied*, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 222 (1994); Armstrong v. State, 958 S.W.2d 278, 283 (Tex.App.–Amarillo 1997, pet. ref'd).

There is evidence that appellant and his group set out that night to provoke the Hispanics gathered in apartment number eight. Several witnesses testified they heard threats made against Mexicans. Although the murder weapon was not recovered, appellant admitted he pointed the gun at the victim and fled the scene after the shooting. Although conflicting evidence was presented on whether the victim possessed a knife, there is no evidence to indicate he brandished a knife prior to being shot. Appellant's acts, words, and conduct were sufficient for the jury to infer his intent to cause the victim's death or recklessly cause bodily injury to him during the commission of an assault while exhibiting a deadly weapon.[2] Having conducted a neutral review of all the evidence, we conclude the jury was rationally justified in finding appellant guilty of murder beyond a reasonable doubt. Issue two is overruled.

---

[2]To avoid repetition, refer to our discussion of the evidence in our analysis of issue one, wherein we concluded the jury rejected appellant's self-defense theory.

14

Accordingly, the judgment of the trial court is affirmed.


                                        Don H. Reavis
                                           Justice

Do not publish.